**Dave KONG; John Messina,**
**Plaintiffs–Appellants,**

v.

**CITY AND COUNTY OF SAN FRANCISCO; the San Francisco Recreation and Parks Commission; Joel Robinson, in his official capacity as the Acting General Manager of the Department of Recreation and Parks; Council of Armenian American Organizations of Northern California, a California corporation, Defendants–Appellees.**

No. 00–15261.

D.C. No. CV–97–04072–MMC/MJ.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 2001.

Decided Sept. 5, 2001.

Before CANBY, HAWKINS, and GOULD, Circuit Judges.

MEMORANDUM *

█ The district court's factual finding that the sale of the Mount Davidson parcel "was conducted by means of an open and public auction" finds strong support in the record. Invitations to bid were published five times in the newspaper designated by the Board of Supervisors for publication of official City advertising. Plaintiff Kong must have seen or been informed of this publication, because he attended the public tour and inspection detailed therein. Further, plaintiffs submit no reason why the district court, as finder-of-fact, clearly erred in deciding to believe the testimony of the Mayor's secretary that "any delay in responding to [plaintiff Messina's inquiry] was not the result of any desire to enhance the prospects of bidders favoring retention of the Cross."

█ The remedy fashioned by the parties in *Carpenter v. City & County of San Francisco*, 93 F.3d 627 (9th Cir.1996), adequately resolved any No Preference Clause violation—the Cross is now located

on private property. *See Ellis v. City of La Mesa*, 990 F.2d 1518, 1525 (9th Cir. 1993) ("As a threshold consideration [in a No Preference Clause inquiry], we must determine if the display is on public property.").

█ The remedy also results in no Establishment Clause violation. The Cross would violate the Establishment Clause if it had the effect of endorsing religion. *See County of Allegheny v. Am. Civil Liberties Union*, 492 U.S. 573, 595, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). The contours of "effect" have been analyzed under the "perception of endorsement" test developed in *Lynch v. Donnelly*, 465 U.S. 668, 690, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring). The test analyzes "[w]hether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval [to a reasonable person]." *Id.* However, "the Establishment Clause inquiry cannot be distilled into a fixed, per se rule. Thus, '[e]very government practice must be judged in its unique circumstances to determine whether it constitutes an endorsement or disapproval of religion.'" *Capital Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 778, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995) (O'Connor, J., concurring) (quoting *Lynch*, 465 U.S. at 694 (O'Connor, J., concurring)).

This case is different in its circumstances from *Freedom From Religion Found., Inc. v. City of Marshfield*, 203 F.3d 487 (7th Cir.2000). Though both cases involve the sale of relatively small parcels of public parks containing religious statues, the physical characteristics of the Mount Davidson parcel are quite different from those of the parcel in *Marshfield*. *See Marshfield*, 203 F.3d at 494 (basing

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

holding of perception of endorsement on historical association of parcel with public forum, dedication of property to public use, and physical relation of parcel to the rest of the park). In *Marshfield*, "the [parcel was] not physically differentiated from the surrounding public park, and no visual boundaries currently exist[ed] that would inform the reasonable but unknowledgeable observer that the [parcel] should be distinguished from the public park." *Id.* On the contrary, the Mount Davidson parcel is physically differentiated from the rest of the park because it is comprised of a clearing at the Park's peak. The rest of Mount Davidson Park contains abundant tree-cover, which serves to visually differentiate the Park from the parcel and ensures that Park visitors will not often be able to see the Cross. Additionally, unlike *Marshfield*'s single plaque located in front of the statue on the private parcel, 203 F.3d at 490, Mount Davidson Park contains several signs throughout the park describing the private nature of the parcel and the circumstances of the conveyance:

> The flat, cleared area at the top of Mount Davidson, including the land upon which the cross stands, is not owned or maintained by the City and County of San Francisco. The City sold this land in accordance with the constitutional principle of separation of church and state, which is fundamental to our political system. The transfer was made to comply with a federal court decision holding that the presence of the cross on public land violated the California Constitution. The City sold the land at a public auction to the Council of Ar-

menian American Organizations of Northern California, a non-profit, secular organization. The conveyance was approved by San Francisco voters on November 4, 1997.

*See Capital Square*, 515 U.S. at 776 (O'Connor, J., concurring) ("In context, a disclaimer helps remove doubt about state approval of respondents' religious message."); 515 U.S. at 794 (Souter, J., concurring) (restriction of religious displays to one part of a public forum with a permanent sign "marking the area as a forum for private speech carrying no endorsement from the State" would secure Establishment Clause compliance).

AFFIRMED.

CANBY, Circuit Judge, concurring.

CANBY, Circuit Judge.

I agree with the majority that there is sufficient evidence in the record to support the district court's ruling that the auction was properly conducted. Were I deciding this case without the constraint of our very recent decision in *Paulson v. City of San Diego*, 262 F.3d 885 (9th Cir.2001), however, I would conclude that the present arrangement violates the State's "no preference" clause [1] and the Constitution's Establishment Clause. I find it highly significant that the land in question was part of a public park that had an impermissible religious cross on it, and then was conveyed to private parties *with a requirement that the land remain open to the public.* From the public's viewpoint, noth-

---

[1] I do not agree with the majority's interpretation of the statement in *Ellis v. City of La Mesa*, 990 F.2d 1518, 1525 (9th Cir.1993), that "[a]s a threshold consideration, we must determine if the display is on public property." That statement was simply an introduction to the analysis in the context of that case; it did not announce a rule that a local govern-

ment could never violate the "no preference" clause when the religious display is on private property. Certainly sale by a city of a tiny plot in a park on condition that the purchaser maintain a particular religious symbol on it would violate the "no preference" clause. *See Murphy v.. Bilbray*, 1997 WL 754604 at *10 (S.D.Cal.1997).

ing has really changed; the land that was public as part of the park remains public despite the change of title, and the religious display remains on it. *See Marshfield*, 203 F.3d 487, 495 (7th Cir.2000). In essence, the land has become a public forum in which only one group can maintain a particular religious symbol. *See id.* The City's disclaimers, although well-phrased and explicit, are not enough, in my view, to overcome the perception arising from the actual use of the land.

My views, however, now appear to be irreconcilable with *Paulson*, which at least for the moment is the law of our circuit. I therefore concur in the judgment under its compulsion.